EPAMINONDAS WILSON *vs.* BOYLSTON NATIONAL BANK.

Suffolk.    November 11, 1897. — November 24, 1897.

Present: ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Composition — Preference — Action.*

Where a debtor makes a composition with his creditors under St. 1884, c. 236, and acts in amendment thereof, and thereby obtains his discharge, he cannot maintain an action at law against a creditor to recover a sum of money alleged to have been paid to the creditor by the assignee after the discharge was granted, in pursuance of an agreement previously made, as a preference, in consideration of the creditor's assent to the debtor's composition, without first taking proceedings in the Court of Insolvency to have the assignee settle his account. Whether he may proceed in any form directly against the creditor, if his remedy in the Court of Insolvency should prove insufficient, *quære.*

CONTRACT, for money had and received. The declaration alleged that the plaintiff, having filed a petition in insolvency, made a composition with his creditors and obtained his discharge on April 12, 1892 ; that by force of the statutes all his rights and estate which were vested in the assignees, and not lawfully used in carrying out the composition, reverted to and revested in him, and were now vested in him absolutely; that prior to said April 12, 1892, his assignees, the defendant bank, and " one J. N. Thompson entered into an agreement to give to the defendant, with intent to procure its assent to said composition, five thousand three hundred fifty-nine and $\frac{22}{100}$ dollars in excess of twenty cents on each dollar of its just claim; and in pursuance of said agreement, the defendant, through said Thompson as its attorney, assented to said composition, and thereafterwards, on the 25th day of said April, in consideration of its said assent and in pursuance of said agreement, was paid by and received from said assignees, out of moneys of the plaintiff in their hands as assignees, said sum of five thousand three hundred fifty-nine

and $\frac{22}{100}$ dollars in excess of twenty cents on each dollar of its just claim, and that the aforesaid agreement and payment were made without his knowledge or assent." The declaration further alleged that the agreement and payment were in fraud of the plaintiff's rights, a preference, and in violation of the statutes relating to insolvency and to composition by insolvent debtors.

The defendant demurred to the declaration, assigning as ground therefor, among other things, that it was nowhere alleged in the declaration that any account of the assignees as such had been filed or allowed in the insolvent court.

*Morton,* J. sustained the demurrer, ordered judgment for the defendant, and, at the plaintiff's request, reported the case to the full court. If the ruling was right, judgment was to be affirmed; otherwise, the demurrer was to be overruled, the defendant was to answer, and the case was to stand for trial.

*J. C. Ivy,* for the plaintiff.

*L. S. Dabney,* for the defendant.

KNOWLTON, J.    If the allegations of the declaration are true, a gross fraud has been perpetrated upon the plaintiff's creditors, and if, as is implied by the averment that the payment was made in fraud of his rights, the plaintiff was not a party to the fraud, the law will give him a remedy. But it does not follow that he can maintain this action.

When the assignees received the assignment from the judge of insolvency, they became the holders of the legal title to the plaintiff's property. Pub. Sts. c. 157, § 46. The plaintiff made a composition with his creditors, and thereby obtained a discharge. Section 10 of St. 1884, c. 236, is as follows: "Upon the granting of the discharge, the moneys, vouchers, and securities deposited in court shall be paid and delivered by the register on demand to the persons entitled thereto, and all other property of the debtor shall revert to and be revested in him." It is alleged that the assignees, after the discharge was granted, paid to the defendant, in pursuance of an agreement previously made, $5,359.22 as a preference, in consideration of its assent to the plaintiff's composition. The plaintiff seeks to recover this amount on a count for money had and received to his use. His contention is that, immediately on his obtaining his discharge, this money in the hands of the assignees revested in him by virtue of the statute, and that he may follow it into the hands

of the defendant, and maintain an action for it without other proceedings.

This contention leaves out of view the nature of the title of the assignees, and their official rights and duties. Whether under this charge specific articles of property in the hands of an assignee would revest in the debtor after his discharge in such a way that he could maintain an action of replevin for them, as against a claim of the assignee of a right to dispose of them to meet proper disbursements previously made in the performance of his official duties, or to enable him to obtain compensation for his services, it is unnecessary to decide. If they would, which we do not intimate, it is quite clear that money in his hands obtained from collections or from a sale of property would not. Money has no earmarks. It is the duty of the assignee in insolvency to render to the court an account of all that has come into his possession, and he is required to give a bond with sureties, with condition for the faithful performance of his duties. Pub. Sts. c. 157, §§ 42, 50. He may properly pay out of the estate whatever expenses are reasonably incident to the business of his office, and may retain such sums as may be allowed by the court as a compensation for his services. The amount to be paid over to the debtor in any case, under the statute relied on by the plaintiff, can only be determined upon the allowance of the account. It follows that an assignee cannot properly be held liable to an action by the debtor for money in his hands, until proceedings have been taken in the Court of Insolvency for the settlement of his account. The doctrine is the same in substance as that which relieves a guardian from liability to be sued at common law by his ward before rendering his account in the Probate Court. See *McLane* v. *Curran*, 133 Mass. 531; *Murray* v. *Wood*, 144 Mass. 195; *Thorndike* v. *Hinckley*, 155 Mass. 263. The rule is the same in regard to a testamentary trustee acting under an appointment by the Probate Court. *Upham* v. *Draper*, 157 Mass. 292. The reasons for the rule have been sufficiently stated in the cases above cited. These reasons apply as well to assignees in insolvency as to guardians. A guardian is not in any proper sense the owner of the property of his ward. *Manson* v. *Felton*, 13 Pick. 206, 211. *Brown* v. *Dunham*, 11 Gray, 42. *Moore* v. *Hazelton*, 9 Allen, 102, 104.

After a ward has attained his majority, the ward's title to the property in the hands of his guardian is as good, and his claim to the possession of it as meritorious, as if he were an insolvent debtor, whose property in the hands of an assignee had revested under the statute above quoted. The difference in form between the bonds given by guardians and those given by assignees is immaterial.

An orderly and proper adjustment of the rights of assignees, and of all persons claiming under them, requires that these officers should not be subject to suits under this statute until proper proceedings have been had to settle their accounts in the Court of Insolvency.

If the plaintiff could not maintain the action against the assignees for this money without first calling them to account in the Court of Insolvency, he cannot maintain this action against one to whom the assignee made a payment. Whether the plaintiff may proceed in any form directly against the defendant, if his remedy in the Court of Insolvency should prove insufficient, it is not necessary now to determine.

*Judgment affirmed.*